UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPERION THERAPEUTICS, INC.<br><br>Plaintiff,<br><br>v.<br><br>DAIICHI SANKYO EUROPE GMBH.,<br><br>Defendant. | Civil Action No: 1:23-cv-02568 |

**MEMORANDUM IN SUPPORT OF ORDER TO SHOW CAUSE FOR
<u>SERVICE OF PROCESS BY EMAIL ON DEFENDANT</u>**

## **TABLE OF CONTENTS**

FACTUAL BACKGROUND ................................................................................................... 1

ARGUMENT .......................................................................................................................... 5

    A.    Service Under the Hague Convention is not Mandatory ..................................... 5

    B.    Alternative Service via Email is Permitted Under Rule 4(f) and Necessary Under the Circumstances ................................................................................................. 6

    C.    Service Via Email is Not Prohibited by International Agreement ..................... 8

    D.    Service of Process via Email Comports with Due Process and is a Reasonable Form of Notice to Defendant ............................................................................. 9

    E.    Esperion Will Suffer Irreparable Harm if the Court Does Not Grant Immediate Relief .. 10

CONCLUSION ..................................................................................................................... 11

Plaintiff Esperion Therapeutics, Inc. ("Esperion"), by and through its undersigned counsel, hereby respectfully submits this memorandum of law in support of its motion, by order to show cause, seeking an order granting service of process by email on Dr. Jan Van Ruymbeke, Chief Executive Officer of Defendant Daiichi Sankyo Europe GmbH ("DSE" or "Defendant"), at his email address, Jan.VanRuymbeke@daiichi-sankyo.eu, on behalf of DSE, to notify it of the above-captioned matter and any action related to it. DSE is a limited liability company in Germany with its principal place of business in Munich, Germany.

## FACTUAL BACKGROUND

On March 27, 2023, Esperion filed a Complaint for Declaratory Judgment against DSE (the "Complaint"). The Complaint relates to Esperion's right to receive a $300 million Regulatory Milestone Payment, as defined in the License and Collaboration Agreement between Esperion and DSE, dated January 2, 2019 (the "Agreement"). A redacted copy of which is attached hereto as Exhibit A. Pursuant to the Agreement, Esperion is entitled to a Regulatory Milestone Payment from DSE on the occurrence of an event, termed Regulatory Milestone Event in the Agreement: Regulatory Approval in the DSE Territory[1] that includes "cardiovascular risk reduction" in the label that correlates with the relative risk reduction rate equal or greater than 15%. Ex. A at Section 9.2. The Complaint seeks a declaratory judgment to settle a legal dispute that exists between Esperion and DSE regarding how the phrase "cardiovascular risk" is to be defined as it is used in the relevant section of the Agreement.

---

[1] The DSE Territory means "Andorra, Austria, Belgium, Bulgaria, Croatia, Republic of Cyprus, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Ireland, Italy (incl. Vatican City), Latvia, Liechtenstein, Lithuania, Luxembourg, Malta, Monaco, Netherlands, Norway, Poland, Portugal, Romania, San Marino, Slovenia, Slovakia, Spain, Sweden, Switzerland and United Kingdom" and Turkey. Ex. A at Section 1.35 and 1st Amendment to the Agreement, dated June 18, 2020.

Under the Agreement, DSE agreed to "submit[] to the jurisdiction of the courts sitting in New York City, New York, for the purpose of any dispute arising between the Parties in connection with this Agreement" and agreed that the Agreement "shall be construed and the respective rights of the Parties determined in accordance with the substantive Laws of the State of New York." Ex. A at Sections 14.3 and 14.4. In negotiating the Agreement, DSE was represented by Andres Liivak, a corporate lawyer practicing out of White & Case LLP's New York office.

In the weeks leading up to the initiation of this action, individuals at Esperion had been in regular email and telephone contact with DSE regarding the dispute underlying the Complaint. Specifically, on March 8, 2023 Andreas Berger, Senior Director of International Partner Management of DSE, wrote Patti Vanston and Benjamin Looker, respectively Executive Director, Sales Learning and Development and General Counsel of Esperion, an email asking that Esperion provide the basis for its view that it may be entitled to the Regulatory Milestone Payment. *See* S. Koenig Declaration at ¶ 5. The parties continued to correspond by email over the next few days and on March 14, 2023, DSE informed Esperion that based on the terms of the Agreement, DSE would never be required to pay any Regulatory Milestone Payment—a position that Esperion disputes and which is the subject of the Complaint. *See id*. at ¶ 7. Subsequently, through its counsel, Esperion confirmed DSE's position regarding DSE's interpretation of the Agreement. Both the parties and counsel for the parties continued to communicate by email regarding the disputed Regulatory Milestone Payment up until and through the time Esperion filed the Complaint.

Immediately after the Complaint was filed with this Court on March 27, counsel for Esperion, Jordan Weiss of Goodwin Procter LLP, emailed counsel for DSE, David Hille and Isaac Glassman, both out of White & Case LLP's New York office, a copy of the Complaint and all

related papers and asked if counsel would accept service on behalf of DSE.  *See* J. Weiss Declaration at ¶ 3.  On the same day, Mr. Hille responded to Mr. Weiss acknowledging receipt of the Complaint and stating that he would get back to Mr. Weiss regarding service within the next few days.  *See id*. at ¶ 4.  On March 30, 2023, Mr. Hille emailed Mr. Weiss stating, "We are not authorized to accept service for DSE."  *See id*. at ¶ 5.

After the Complaint was filed and counsel for Esperion emailed the Complaint to DSE's counsel, numerous articles were published about Esperion's lawsuit against DSE.  DSE representatives are quoted in those articles.  For instance, on March 28, 2023, Fierce Pharma published an article, *Esperion, Daiichi Sankyo milestone payment feud heats up with new lawsuit*, in which a statement made via email by a DSE spokesperson is quoted:

> Daiichi and Esperion "share the same common goal" of fighting cardiovascular disease and have "built a partnership with regular and constructive interactions," a Daiichi Sankyo spokesperson said in an emailed statement to Fierce Pharma. "Such interaction will continue in spite of our current differences in opinion by both parties concerning contractual provisions," the spokesperson continued.[2]

Similarly, Endpoints News published an article on the same day, *Esperion sues Daiichi Sankyo, demanding payment of $300M milestone for cardio drug*, in which an emailed statement made by a DSE representative is quoted: "In an email, Daiichi declined to comment other than to acknowledge 'differences in opinion by both parties concerning contractual provisions.'"[3]

Esperion has suffered, and continues to suffer great harm as a result of DSE's position relating to the Regulatory Milestone Payment—that under no circumstances will DSE be obligated

---

[2] Zoey Becker, *Esperion, Daiichi Sankyo milestone payment feud heats up with new lawsuit*, Fierce Pharma, (Mar. 28, 2023), https://www.fiercepharma.com/pharma/esperion-daiichi-sankyo-milestone-payment-feud-heats-lawsuit (quotation marks in the original).

[3] Drew Armstrong & Kyle LaHucik, *Esperion sues Daiichi Sankyo, demanding payment of $300M milestone for cardio drug*, Endpoints News (Mar. 28, 2023), https://endpts.com/esperion-sues-daiichi-sankyo-demanding-payment-of-300m-milestone-for-cardio-drug/.

to pay Esperion the $300 million Regulatory Milestone Payment. When this dispute first arose, consistent with its obligations as a public company, on March 15, 2023, Esperion publicly disclosed that it "has had communications with Daiichi Sankyo Europe (DSE) regarding potential milestone payments in which DSE has conveyed that it disagrees with the Company's assessment that the CLEAR Outcomes data would support the Company's right to receive any milestone payments upon inclusion of certain required cardiovascular risk reduction data in the EU label, because the CLEAR Outcomes study showed a 12.98% reduction in MACE-4, the primary endpoint of the trial." *See* March 15, 2023 Form 8-K. On March 15, 2023, prior to issuing the disclosure, Esperion's stock price was $3.99. When the market opened the day following the disclosure on March 16, 2023, Esperion's stock price immediately fell to $1.49. Since the March 15 announcement, Esperion's stock price has not risen above $2. Additionally, since this dispute arose, it has been materially more difficult for Esperion to raise the capital necessary for the continued operation of its business. Even where Esperion has been able to raise funds, it has had to do so on significantly lower market terms. Moreover, not only has DSE's position caused ongoing harm to Esperion, but it risks the continued development and distribution of a significant and valuable medicine that could help millions of people around the world. As one news outlet put it, "For Esperion, the stakes [of this lawsuit] range from very high to existential."[4]

DSE understands the tenuous position Esperion is in. In fact, that is likely why, despite submitting to the jurisdiction of this Court, DSE refuses to accept service of the Complaint. DSE

---

[4] Armstrong & LaHucik, *supra* note 3*; see also* Zacks Equity Research, *Esperion (ESPR) Plummets 54% Over Milestone Payment Row*, Yahoo! (Mar. 17, 2023), https://www.yahoo.com/entertainment/esperion-espr-plummets-54-over-165704287.html; Dustin Walsh, *Embattled Ann Arbor drugmaker Esperion sells $56.7 million in stock to raise cash*, Crain's Detroit Business (Mar. 20, 2023), https://www.crainsdetroit.com/health-care/drugmaker-esperion-sells-567-million-stock-raise-cash; Jonathan Block, *Esperion Therapeutics falls 55% in dustup with Daiichi Sankyo over milestone payments*, Seeking Alpha (Mar. 15, 2023), https://seekingalpha.com/news/3947953-esperion-therapeutics-down-55-in-dustup-with-daiichi-sankyo-over-milestone-payments.

is simply playing a game of delay, hoping that with enough passage of time, Esperion will simply no longer be in a condition to enforce its rights under the Agreement.

For the reasons outlined below, service by email on DSE directly is the most expedient and appropriate manner to allow these proceedings to begin so that Esperion can obtain the relief to which it is entitled.

## ARGUMENT

Rule 4(f) of the Federal Rules of Civil Procedure authorizes service upon an individual in a foreign country: (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Convention]; (2) "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ; or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f); *see also Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 340 (E.D.N.Y. 2021); *Mattel, Inc. v. Animefun Store*, No. 18-CV-8824, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020) ("[Rule 4(h)] confirms that service of process on foreign corporations may be made using the same methods outlined in [Rules] 4(f)(1) and 4(f)(3), among other provisions.").

### A. Service Under the Hague Convention is not Mandatory

Courts in the Second Circuit "have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f)." *Grp. One Ltd.*, 523 F. Supp. 3d at 341 (quoting *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), No. 10-BR-13164, 2020 WL 7345988, at *11 (Bankr. S.D.N.Y. 2020)). Given that there is no hierarchy, there is no requirement that a court must first require a party to exhaust the potential for service under the Hague Convention first before granting an order permitting alternative service under Rule 4(3)(f). *Id.* (permitting service by email on a party located in Germany pursuant to Rule 4(f) without first requiring the

Plaintiff to attempt service pursuant to the Hague Convention); *see also Convergen Energy LLC v. Brooks*, No. 20-CV-3746, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020) ("[T]here is no strict requirement that a plaintiff pursue service through an international agreement before asking a court's assistance in ordering alternative service, and the decision of whether to allow that service is committed to the sound discretion of the district court.") (internal citation omitted).[5]

Germany is a signatory to the Hague Convention and as such, designates a "Central Authority, which will undertake to receive requests for service coming from other Contracting States." *See* Hague Convention, art. 2. The process that Central Authorities undergo to execute process on foreign defendants is a lengthy and cumbersome one, usually taking at least four months. *See* J. Weiss Declaration at ¶ 6. Given the urgency of this dispute—that Esperion may be limited in raising the capital necessary to continue operations until this dispute is promptly resolved, and certainly on lower market terms—service under the Hague Convention is not feasible.

### B. Alternative Service via Email is Permitted Under Rule 4(f) and Necessary Under the Circumstances

Rule 4(f)(3) allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise

---

[5] While some courts in this district have required that Plaintiff must show that it has attempted service by conventional means before alternative service is permitted, many courts in this district do not agree and do not require such a showing. *Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 WL 16954854, at *2 (Fed. Cir. Nov. 16, 2022) (Appeal from the United States District Court for the Southern District of New York) ("[Defendant] argues that a plaintiff must show it has attempted service by conventional means before alternative service is permitted. We do not agree. While some courts have required such a showing, others have not."); *see also S.E.C. v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) ("A plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3).")

interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Grp. One Ltd.*, 523 F. Supp. 3d at 344; *Cunningham v. Gen. Motors LLC*, No. 20-CV-3097, 2020 WL 4748157, at *1-2 (S.D.N.Y. Aug. 17, 2020). "[T]he decision of whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 CV. 8118 (PGG), 2018 WL 6253877, at *3 (S.D.N.Y. Sept. 21, 2018). Such proposed means of service, "'must also comport with constitutional notions of due process,' which requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *RSM Prod. Corp. v. Fridman*, No. 06 CIV. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) (internal citations omitted). Similarly, "[c]ourt-directed service pursuant to Rule 4(f)(3) may be justified under certain circumstances, however, such as when Hague Service Convention methods do not permit service 'within the time required by the circumstances.'" *Id.* (citing Fed. R. Civ. P. 4(f)(3), Advisory Comm. Notes, 1993 Amendment).[6]

Given the urgency of this matter and the ongoing harm this dispute has caused Esperion, and the lengthy delay service under the Hague Convention would cause in resolving this dispute, court intervention to permit alternative service by email is necessary. Numerous courts in the Second Circuit have found that "lengthy delays in service under the Hague Convention are sufficient to show that alternative service under Rule 4(f)(3) is warranted." *Equipav S.A.*

---

[6] Certain courts in the Southern District of New York also consider two discretionary factors before permitting alternative service under Rule 4(3): "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, No. 22 CIV. 4594 (PGG), 2022 WL 2758417, at *4-5 (S.D.N.Y. July 14, 2022) (granting request for alternative service on Defendants' counsel via email and finding that service under the Hague Convention "would result in undue delay" and that such lengthy delay warrants court intervention.). While this Court is not required to consider these discretionary factors, both of the discretionary factors weigh in favor of alternative service given the undue delay that service under the Hague Convention would cause.

*Pavimentacao*, 2022 WL 2758417, at *5; *see also Aircraft Engine Lease Fin., Inc. v. Plus Ultra Lineas Aereas, S.A.,* 21 Civ. 1758, 2021 WL 6621578, at *1 (S.D.N.Y. Apr. 23, 2021) ("[B]ecause service through the Hague Convention would unnecessarily delay this case, the Court finds that intervention is necessary."); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3).").

### C. Service Via Email is Not Prohibited by International Agreement

Germany has expressly objected to Article 10 of the Hague Convention, which provides for the "freedom to send judicial documents, by postal channels, directly to persons abroad."[7] However, "Article 10(a) objections do not extend to service via email." *Makina v. Kimya Endustrisi A.S*, No. 22 CIV. 3933 (PGG), 2022 WL 3018243, at *3 (S.D.N.Y. July 29, 2022); *see also Doe v. Hyassat*, 342 F.R.D. 53, 59 (S.D.N.Y. 2022) ("Although Austria has objected to Article 10(a) of the Hague Service Convention – which permits service via 'postal channels' – such an objection does not extend to service via email."); *Grp. One Ltd.*, 523 F. Supp. 3d at 343 (citing *Sulzer Mixpac AG v. Medenstar Indus. Co*., 312 F.R.D. 329, 339 (S.D.N.Y. 2015) (("[T]he [c]ourt finds more persuasive the reasoning of several courts that have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email.")).

Alternative service is proper here under Rule 4(f)(3) because email, Esperion's proposed method of service, is not prohibited by the Hague Convention, the foremost international agreement on service of process, and it is the method of service most likely to reach DSE. *See id.* at 342-43.

---

[7] *See* Hague Convention, art. 10; *Germany – Central Authority & practical information*, HCCH (last updated Sept. 9, 2022), https://www.hcch.net/en/states/authorities/details3/?aid=257.

### D. Service of Process via Email Comports with Due Process and is a Reasonable Form of Notice to Defendant

The constitutional notion of due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *RSM Prod. Corp.*, 2007 WL 1515068, at *1 (internal citations omitted). This Court has previously held that service via email comports with due process, where the foreign defendants "engaged in online business and regularly communicated with customers through email" and because defendants' counsel repeatedly engaged with plaintiff by email concerning the legal action, "it can thus hardly be said that service by email failed to apprise the [defendants] of the initiation of this litigation and to provide them with an opportunity to register their objections to it." *Mattel, Inc.*, 2020 WL 2097624, at *5. Similarly this Court found that where "defendants conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email" that service via email satisfied the requirements under Rule 4(f). *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 GBD, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007); *see also Zanghi v. Ritella*, No. 19-CV-5830, 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020) (finding that judicial approval of service via email is generally supported by facts indicating that the person to be served would likely receive the documents); *Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380, 2019 WL 6498305, at *3 (S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found by courts to meet the requirements of due process.") (citing *Elsevier, Inc., v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018).

Service of process via email in accordance with Rule 4(f) is warranted in this matter. DSE is a sophisticated party, represented by counsel in New York, and with regards to any disputes related to the Agreement, agreed to jurisdiction in New York, and that such disputes be governed

by New York law. Ex. A at Sections 14.3 and 14.4. Further, the parties have been regularly and primarily communicating by email since their relationship began prior to executing the Agreement in 2019. S. Koenig Declaration at ¶ 3. And since this dispute arose, the parties and counsel have been regularly communicating specifically about the facts underlying the Complaint by email. *Id*. at ¶ 4. In fact, counsel for DSE acknowledged receipt of the Complaint on March 27. *See* J. Weiss Declaration at ¶ 4. Representatives from DSE have also responded to reporters' inquiries about the lawsuit by email. *See supra* at 3. DSE's contacts with the U.S. and New York are not limited to its relationship with Esperion. DSE conducts as significant amount of business in the U.S. and New York—DSE has U.S. subsidiaries, regularly performs business in the U.S., specifically New York. Finally, DSE has publicly demonstrated that it *has* notice of the Complaint, removing any practical concern of a failure of notice.

To allow DSE to hide behind the confines of international waters under the inapplicable terms of the Hauge Convention when it has specifically submitted itself to jurisdiction here in New York, and where DSE and its counsel has communicated with Esperion via email throughout its entire business relationship, would be entirely unfair. Service of process upon DSE via email is more than "reasonably calculated to give notice" of this litigation.[8]

**E. Esperion Will Suffer Irreparable Harm if the Court Does Not Grant Immediate Relief**

The need for immediate resolution of the matter cannot wait the *likely 4 months* that would be needed to serve DSE through the Hague Convention. As stated in the Complaint, Esperion has been irreparably harmed and will continue to suffer harm until the Court is able to rule that it has successfully achieved one of the two conditions entitling it to a Regulatory Milestone Payment under the plain and unambiguous terms of the Agreement. Esperion suffered immediate economic

---

[8] Alternatively, if this Court declines to permit service by email, Esperion requests that service via in-person delivery to DSE's offices in Munich be permitted.

harm.  Esperion's stock price fell by over 50%, dropping from $3.99 to $1.49 after Esperion publicly disclosed that DSE believed that it would never be obligated to pay the Regulatory Milestone Payment of $300 million owed to Esperion under the Agreement.  Since the March 15 public disclosure, Esperion's stock price has not risen above $2.  A Business Insider article explained on March 16 that Esperion's "shares are plummeting Thursday after the company reported a disagreement with one of its partners over certain milestone payments."[9]  Additionally, since this dispute arose, it has been materially more difficult for Esperion to raise the capital necessary for the continued operation of its business.  DSE's position has caused ongoing harm to Esperion, and it risks the continued development and distribution of a significant and valuable medicine that could help millions of people around the world.  As one news outlet put it, "For Esperion, the stakes [of this lawsuit] range from very high to existential."[10]

## CONCLUSION

Based on the foregoing, Esperion  respectfully requests that the Court grant its request to permit alternative service of process by email on Defendant.[11]

---

[9] Benzinga, *Why Esperion Therapeutics Stock Is Tanking Thursday*, Business Insider: Markets Insider (Mar. 16, 2023), https://markets.businessinsider.com/news/stocks/why-esperion-therapeutics-stock-is-tanking-thursday-1032172981

[10]  Armstrong & LaHucik, *supra* note 3; *see also* Zacks Equity Research, *supra* note 4; Walsh, *supra* note 4; Block, *supra* note 4.

[11] Esperion is seeking that the Complaint served via email (or alternatively by in-person delivery to DSE's offices in Munich) would be in English.  All communications between the parties concerning the Agreement have been in English and the Agreement itself is in English.  Declaration of S. Koenig at ¶ 3. *See Grp. One Ltd.*, 523 F. Supp. 3d at 347 (finding that "service by email of documents written in the English language is authorized and comports with due process" where defendants were "sufficiently proficient in the English language").

-12-

Dated: April 3, 2023                                Respectfully submitted,

                                                                   ESPERION THERAPEUTICS, INC.,

                                                                   By its attorneys,

                                                                   */s/ Jordan D. Weiss*
                                                                   Jordan D. Weiss
                                                                   Emily S. Unger (*pro hac vice* forthcoming)
                                                                   Goodwin Procter LLP
                                                                   The New York Times Building
                                                                   620 Eighth Avenue
                                                                   New York, NY 10018
                                                                   (212) 813-8800
                                                                   JWeiss@goodwinlaw.com
                                                                   EUnger@goodwinlaw.com