UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPERION THERAPEUTICS, INC., <br><br>            Plaintiff, <br><br> -against- <br><br> DAIICHI SANKYO EUROPE GMBH, <br><br>            Defendant. | No. 1:23-cv-02568-ER |

**JOINT ELECTRONIC DISCOVERY STIPULATION**

  Plaintiff Esperion Therapeutics, Inc. ("Esperion") and Daiichi Sankyo Europe GmbH, ("DSE"), individually a "Party" and together the "Parties," hereby stipulate to the following Joint Electronic Discovery Stipulation ("Stipulation") relating to the protocols for searching and producing documents and electronically stored information in this action, which binds all Parties and their counsel of record.

  1.  The following parameter shall apply to identification of documents for responsiveness and production.

    A.  **Definitions**

     i.  "Confidentiality Designation" means the legend affixed to confidential information.

     ii.  "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure, and includes drafts.

     iii.  "Disclosure or Discovery Material" means all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, documents, testimony, transcripts or tangible things) that are produced or

|      | |
|------|-|
|      | generated in disclosures or responses to discovery in this matter, in connection with depositions, document productions, subpoenas, or otherwise. |
| iv.  | "Electronically stored information" or "ESI" as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34. |
| v.   | "Hard-Copy Document" means a Document existing in paper form at the time of collection. |
| vi.  | "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. |
| vii. | "Metadata" refers to application and system information of a file that contains data about the file, as opposed to describing the content of a file, as the term is described and used in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020. |
| viii.| "Native Format" means and refers to an electronic document's associated file structure defined by the original creating application.  For example, the native format of an Excel workbook is a .xls or .xslx file. |
| ix.  | "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image. |
| x.   | "Producing Party" means a Party or non-party that produces Disclosure or Discovery Material. |
| xi.  | "Professional Vendors" means Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, organizing, storing, retrieving data in any form or medium). |
| xii. | "Receiving Party" means a Party that receives Disclosure or Discovery Material from a Producing Party. |
| xiii.| "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image. |

        B.    **Data Sources.**  The Parties will collect and search all data sources that may have relevant information in their possession, custody or control, subject to the Parties' duty

to make reasonable, good faith, and proportionate efforts to identify and produce relevant information.

2. The following parameters shall apply to ESI production, and to the extent applicable, to hardcopy document production:

A. **General Document Image Format.** Each electronic document shall be produced in image format, with searchable text load files that are compatible with standard litigation support software, including Relativity, Concordance, and IPRO. The images shall be black and white, single-page, 300 DPI, Group IV Tagged Image File Format ("TIFF") format, named with a unique production number followed by the appropriate file extension. The Parties will produce documents in color upon reasonable request. Images for documents created with office or personal productivity software (e.g. word processing documents, spreadsheets, and presentations) shall be produced such that any hidden rows or columns, hidden slides, the BCC line of emails, and tracked changes and comments shall be visible if such information exists.

B. **Hard-Copy Documents.** Hard-Copy documents will be scanned or otherwise converted into electronic form from hard copy documents in the following format:

i. **TIFFs**. All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11 inch page size, except for documents requiring higher resolution or different page size.

ii. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Parties will make their best efforts to have their Professional Vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

iii. Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

iv. **Objective Coding Fields**. The following objective coding fields should be

    provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) source location/custodian.

  v. **OCR Text Files**.  Document level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated.  The text files will not contain the redacted portions of the documents.

  C. **Text-Searchable Documents.**  Each document containing machine searchable text in its native form shall be produced in a text-searchable format.

  D. **Bates Numbering.**  Each TIFF image produced under this order must be assigned a "Bates" or control number that must always:  (1) be unique across the entire document production; (2) maintain a constant length of numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; (4) be sequential within a given document; and (5) be located on the bottom right-hand or bottom left-hand corner of an image, or as set forth in Paragraph E for natively produced documents.  The Producing Party will brand each TIFF image with its corresponding Bates number, using a consistent and legible font type and size.  Parties will make reasonable efforts to avoid obscuring any part of the underlying image with the Bates number.

  E. **Native Files.**  A Party may make a reasonable request to receive a document in its native format, and upon receipt of such a request, the Producing Party shall consider such request and, where reasonable, and feasible produce the document in its native format. Responsive non-privileged Microsoft Excel (or other spreadsheet) files, Microsoft PowerPoint (or other presentation software) files, MS Project files, audio files, and video files  shall be produced in their native format, with a Bates-stamped image slip sheet indicating that the file is being produced in native format at the appropriate location in the production.  Native copies of spreadsheets shall be

4

produced with a link in the NativeLink field, along with extracted text. A TIFF placeholder indicating that the document was provided in native format shall accompany the database record. Should a Party be unable to view the native version of a document as it is viewed in the ordinary course of business, the Parties will meet and confer in good faith to find a reasonable solution.

        F.    **Text and Instant Messages.** Text messages and other non-email text communications sent through messaging applications (e.g. iMessage, Skype, SMS messages, WhatsApp, WeChat, Microsoft Teams, Slack, and Facebook Messenger) and instant messages from any mobile devices used for work-related matters shall be produced in a format that allows for review of responsive non-privileged conversations. Should the Receiving Party have difficulty in reviewing such production, the Parties will meet and confer and the Producing Party will make reasonable, good faith efforts to address the difficulty.

        G.    **Security.** Both Parties will make reasonable efforts to ensure that any productions are free from viruses and provided on encrypted media. Each Party will treat received productions with the same degree of care and security as it treats its own documents.

        H.    **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with any protective order entered in this matter.

        I.    **Deduplication.** A Party is only required to produce a single copy of a responsive document, and a Party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the Parties shall meet and confer to discuss any other

proposed method of de-duplication. Each Party may also use email thread identification and suppression to remove earlier in time or incomplete chains of emails, from its review and production. Any deduplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email.

      J.    **Custodians and Search Terms.**  The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant Documents. The Parties further agree that Search Terms can be used as a mechanism to identify responsive or potentially responsive Documents. By August 4, 2023, the parties will exchange their proposed custodians, with each party to propose any additional custodians to the opposing party by August 9 and responses to any such proposal by August 16.

      By August 7, 2023, DSE will provide (1) the preliminary Search Terms and date or other restrictions it intends to use to identify discoverable information within its possession, custody, or control responsive to Esperion's first set of requests for production and (2) hit counts for each preliminary Search Term. Esperion will propose any additional search terms by August 10, and DSE will respond to that proposal with revised hit reports by August 17. By August 21, Esperion will provide (1) the preliminary Search Terms and date or other restrictions it intends to use to identify discoverable information within its possession, custody, or control responsive to DSE's first set of requests for production and (2) hit counts for each preliminary Search Term. DSE will propose any additional search terms by August 24, and Esperion will respond to that proposal with revised hit reports by August 31. The Parties agree to meet and confer expeditiously

in good faith about the information provided. The preliminary Search Term hit reports shall be run over substantially all of the ESI proposed to be searched.

In the event additional requests for production are served, the party upon which such requests are served will provide (1) any additional custodians and Search Terms it intends to use to identify discoverable information within its possession, custody, or control responsive to those requests and (2) hit counts for each preliminary Search Term concurrently with that party's responses and objections to such requests. For any additional requests for production from either party, the Receiving Party is entitled to request broken down hit counts relating to complex or block Search Terms (e.g. (A or B or C or D) and E), revisions to the Producing Party's Search Terms, and additional custodians within three business days after receiving the Producing Party's list of Search Terms. The Producing Party shall consider in good faith all reasonable requests to run additional or revised terms or to include additional custodians and shall explain any limitations that prevent it from being able to do so. Absent a bona fide dispute or agreement otherwise, the Producing Party will provide hit counts for additional search terms it agrees to run within three business days, along with any objections it has to including in the Producing Party's review and production the proposed search terms and/or additional custodians that are the subject of the revised hit reports.

The Parties will meet and confer in a good faith effort to resolve any issues before the filing of a motion with the Court, in compliance with Federal Rule of Civil Procedure 37(a)(1).

K. **Metadata.** ESI, and hardcopy documents to the extent they have such metadata, shall be produced with the following fields: (a) the beginning Bates number (referring to the first page of the document), (b) the ending Bates number (referring to the last page of the

7

document), (c) the beginning attachment range number, (d) the ending attachment range number (where the attachment range records the relationship of documents to their attachments, and is recorded from the first page of the first document in the attachment range to the last page of the last document in the attachment range), (e) Email Subject, (f) From, (g) To, (h) CC, (i) BCC, (j) Date Sent, (k) Time Sent, (l) Date Received, (m) Time Received, (n) Date Created, (o) Date Modified, (p) Custodian, (q) Custodian All, (r) MD5 Hash, (s) File name, (t) TextLink, (u) NativeLink, (v) Time Zone, (w) Confidentiality, (x) Redacted, (y) File Type, (z) Conversation Index, (aa) Author, (bb) File Size, (cc) File Extension, (dd) Title or Document Subject, and (ee) Message ID.

   L. **Families and Attachments.**  In cases where a document contains attachments, such documents will be produced consecutively (parent followed by attachments), and the Metadata shall also include fields for "BegAttach" (indicating the first production Bates Number of the first document in a family) and "EndAttach" (indicating the last production Bates Number of the last document in the family).

   M. **Foreign Language Documents**.  To the extent that Documents or ESI are produced that contain language(s) other than English, in whole or in part, the Producing Party shall produce all foreign language documents and ESI in their original language.  The Producing Party has no obligation to provide a translation of the Document or ESI or any portion thereof but shall produce translations of such Documents to the extent it has translations in its possession and that were generated in the ordinary course of business and not at the direction of counsel or in connection with this action.

N.      **Translation.**  All documents filed with the Court, submitted for use in Court, or considered or relied upon by any expert witness must be in the English language or accompanied by a certified English translation.  The certified English translation of a foreign-language document must be typed, signed by the translator, attached to the foreign-language document, and include a statement that the translator is competent to translate the language of the document and the translation is true and accurate to the best of the translator's abilities.  If the certification is used for multiple documents, the certification must specify the documents by Bates Number.  The translator's business address and contact information must also be included.

O.      **Clawback Protections.**  The inadvertent production of privileged or work-product-protected Documents or ESI is not a waiver in this case or in any other context.  The parties shall follow the procedures set forth in the Protective Order in the event of any such inadvertent production.

P.      **Treatment of Privileged Information.**  The Parties agree that any Party withholding responsive documents as protected from discovery under any privilege (including, but not limited to, the attorney-client privilege or the work-product doctrine) shall provide a log, as provided for in Rule 26(b)(5) of the Federal Rules of Civil Procedure, which shall follow the deadline for document production ordered by the Court.

1.      The privilege log shall comply with the following requirements:

A.      Unless otherwise agreed or ordered, for all documents withheld or redacted on the basis of privilege, the Parties agree to provide:

   1.   A unique number for each entry on the log.  The Parties shall consistently apply the same unique identifier if a privileged document is included on a revised or amended log.

2. The starting and ending Bates number of each withheld or redacted document.

3. The date of the withheld or redacted document.

4. The Author(s) of the withheld or redacted document.

   a) For emails this should be populated with the metadata extracted from the "Email From" field associated with the file.

   b) Loose ESI should be populated with the metadata extracted from the "Author" field.

5. The Recipient(s) of the withheld or redacted document where reasonably ascertainable. For emails, this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

6. The type of privilege or protection being asserted: (a) AC for Attorney/Client Privilege, (b) WP for Attorney Work Product, (c) CI for Common Interest.

7. A description of why privilege or protection is being asserted over the withheld or redacted document. The description should include information sufficient to identify if the document contained attachments over which privilege is also being asserted.

B. A Party shall only be required to include one entry on the privilege log to identify withheld e-mails that constitute an uninterrupted dialogue between or among individuals (an "E-mail Chain"); provided, however, that the privilege log entry for any E-mail Chain shall identify:

1. That the e-mails are part of an E-mail Chain;

2. The identity of attorneys present on the E-mail Chain; and

3. The custodian for each document.

    C. All privileged or redacted attachments to emails within the E-mail Chain must be logged and shall be identified as attachments within the inclusive E-mail Chain.

    D. If a Party does not engage in inclusive E-mail Chain logging, the Party shall only be required to include one entry on the privilege log for each member of any family of documents (parent and child[ren]) withheld or redacted for privilege, provided that the log entry for any Family shall identify (i) the number of documents being withheld and (ii) that the documents are part of a Family (e.g., "Email and 3 attachments").

    E. Privilege logs shall include a list of all counsel involved in any privileged communications and their title and/or role with respect to the Party.

    F. Privilege logs shall be provided in Microsoft Excel format.

  2. Parties are not required to log withheld or redacted information generated after March 27, 2023 (the filing of the initial complaint).

  3. Privilege logs shall be exchanged on or before November 3, 2023, and objections to challenges to privilege logs shall be exchanged 14 days thereafter.

  4. The Parties shall produce redacted versions of each document that is only partially privileged, and which contains relevant, non-privileged information that can reasonably be produced with appropriate redactions. Documents redacted for privilege that include on their face the information identified above in Section P.1.A(2-7) shall not be included on privilege logs. If such information reflected in Section P.1.A(2-7) is unavailable on the face of the redacted

document(s), then documents redacted for privilege shall be logged in accordance with the requirements in Section P.1.A, above.

5.      Extracted text will ***not*** be provided for electronic documents that have been redacted since the extracted text would reveal the redacted information.  Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.  Documents that do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form as long as the Producing Party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the Receiving Party in the production cover letter or by way of a native redaction field.  Metadata for redacted electronic documents will be limited to the following fields:  Custodian, Duplicate Custodian, BegBates, EndBates, BegAttach, EndAttach, TextLink.

6.      Nothing in this order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of ESI or any other document.

Q.      **Third Party Productions.**  The Parties agree that a Party that issues a non-Party subpoena shall include a copy of this order with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein.  The Parties further agree that:  (a) the issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party within two (2) business days of receiving such documents.

R.      Nothing in this Order affects the Parties' discovery obligations under the Federal Rules of Civil Procedure.

S.      This order may be modified in the Court's discretion or by agreement of the Parties.

Dated:   New York, New York
         September 6, 2023

| GIBSON, DUNN & CRUTCHER LLP | JONES DAY |
|---|---|
| By:  */s/ Connor S. Sullivan* <br> Orin Snyder <br> Matthew Benjamin <br> Mary Beth Maloney <br> Connor S. Sullivan <br> Grace Hart <br> Allyson Parks <br> Alexandra Perloff-Giles <br> Brian Yeh <br> 200 Park Avenue <br> New York, NY 10166-0193 <br> Telephone: 212.351.4000 <br> OSnyder@gibsondunn.com <br> MBenjamin@gibsondunn.com <br> MMaloney@gibsondunn.com <br> CSSullivan@gibsondunn.com <br> GHart@gibsondunn.com <br> AParks@gibsondunn.com <br> APerloff-Giles@gibsondunn.com <br> BYeh@gibsondunn.com <br><br> *Attorneys for Plaintiff Esperion Therapeutics, Inc.* | By:  */s/ Elizabeth Marino* <br> Toni-Ann Citera <br> 250 Vesey Street <br> New York, NY 10281 <br> Telephone: 212.326.3939 <br> tcitera@jonesday.com <br><br> Jeremy Cole <br> Elizabeth Marino <br> Amanda Maslar <br> Charlotte Hogan <br> 110 North Wacker Drive, Suite 4800 <br> Chicago, IL 60606 <br> Telephone: 312.782.3939 <br> jpcole@jonesday.com <br> ejmarino@jonesday.com <br> amaslar@jonesday.com <br> charlottehogan@jonesday.com <br><br> *Attorneys for Defendant Daiichi Sankyo Europe GmbH* |