# JONES DAY

110 NORTH WACKER DRIVE • CHICAGO, ILLINOIS 60606

TELEPHONE: +1.312.782.3939 • JONESDAY.COM

Direct Number: (312) 269-4093
JPCOLE@JONESDAY.COM

October 6, 2023

VIA ECF

The Honorable Edgardo Ramos
United States District Court (S.D.N.Y.)
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Esperion Therapeutics, Inc. v. Daiichi Sankyo Europe GmbH*,
            Civil Action No. 1:23-cv-02568 (S.D.N.Y.)

Dear Judge Ramos:

    We represent Daiichi Sankyo Europe GmbH ("DSE") and respond below to Plaintiff Esperion Therapeutics, Inc.'s ("Esperion") request for a pre-motion conference regarding certain unidentified documents "held by" DSE's parent company, Tokyo-based Daiichi Sankyo Company, Limited ("DS Japan").  DS Japan is not a party to this case nor did it negotiate or sign the agreement at issue.  DS Japan is a separate legal entity on a different continent, with different management and different computer servers.  DSE, on the other hand, is the party that negotiated and signed the agreement.  It is a standalone business in Munich, Germany, with its own CEO, General Counsel and approximately 1,000 employees.  DSE also has subsidiaries that it directly controls.

    Despite these meaningful distinctions, Esperion asks the Court to treat DSE and DS Japan as one, claiming (incorrectly) that DSE has "possession, custody, or control" over ***its parent's*** documents. Esperion's letter misrepresents DS Japan's involvement in the transaction and understates the vast amount of information that DSE has agreed to produce, including any responsive communications between key DSE personnel and DS Japan during the relevant time period.  The Court should deny Esperion's request and see the maneuver for what it is:  an improper attempt to burden DSE and a shortcut around well-settled discovery rules and case law.[1]

    Esperion wrongly contends that DSE is "refusing to review *any* documents held by DS Japan."  Ltr. at 1.  DSE has agreed to produce documents involving DS Japan from multiple sources.  First, DSE has agreed to search for responsive documents in its possession wherein DSE custodians communicated with DS Japan regarding relevant aspects of the agreement.  Thus, any pertinent emails between DSE and DS Japan would be included in DSE's searches. Second, DSE agreed to search the DSE-held email files of Ms. Miki Mashimo and Ms. Mayu Imamura, two DS

---

[1] Plaintiff's tired suggestion that DSE is pushing for delay remains untrue.  DSE is working diligently to comply with all deadlines set by the Court.  If any party is frustrating the discovery process, it is Esperion who has failed to offer a single deposition date for any witness since the parties began discussing scheduling in mid-September.

Japan employees who worked at DSE in Munich during the relevant time period. (Ms. Mashimo from 2014 until May 2018 and Ms. Imamura from April 2018 through the end of the relevant time period). During their time at DSE, they were assigned a DSE email address and emails sent to their DS Japan email addresses were automatically forwarded to their DSE accounts. Thus, any search of the DSE emails of Ms. Mashimo and Ms. Imamura will necessarily include emails sent to their DS Japan email accounts during their time at DSE.

Esperion claims that DSE has "possession, custody, or control" over all DS Japan documents and that documents "flow freely" between the two entities. Ltr. at 2. Not true. A subsidiary lacks control over a corporate parent's documents when there is no evidence the subsidiary "operates as a mere department" of the parent, has "overlap of management or board members," or has operations "effectively dictate[d]" by the parent. *Hake v. Citibank, N.A.*, 2020 WL 1467132, at *7 (S.D.N.Y. Mar. 26, 2020). DSE is a distinct legal entity, not a shell company or "mere department" of DS Japan. DSE and DS Japan have distinct Boards of Directors, management teams, legal and IT departments, and business development teams. They are headquartered in different countries and continents. DSE can negotiate and enter into its own contracts, including agreements of the value and magnitude at issue here. DSE does not, and cannot, control its parent.

Esperion's own cases support this conclusion, denying a motion to compel a party to produce documents from an affiliated entity because the entities were sufficiently separate. *See e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 8588405, at *3 (S.D.N.Y. July 10, 2009) ("interlocking officers or directors, without a showing of actual control, does not establish the practical ability of the parent to obtain the documents of the subsidiary."); *Doe Run Peru S.R.L. v. Trafigura AG*, 2011 WL 13059042, at *4 (D. Conn. Aug. 24, 2011) ("The exchange of the very limited information…even if done routinely…is not evidence of a free flow of documents between the two entities.") (internal citation omitted)).[2]

This Court has also found that a subsidiary does not have control over its parent's documents when it does not have access to those documents "in the ordinary course of business." *Zenith Electronics LLC v. Vizio, Inc.*, 2009 WL 3094889, at *2 (S.D.N.Y. Sept. 25, 2009). Likewise, this Court has denied motions to compel a subsidiary's production of a parent's documents when the entities have "separate computer systems, and neither can access information in the other's system." *Linde v. Arab Bank, PLC*, 2009 WL 1456573, at *3 (E.D.N.Y. May 22, 2009). DSE does not obtain the documents that Esperion seeks in the ordinary course of business. Nor does DSE have access to DS Japan's servers or the email files of DS Japan employees.

---

[2] Esperion's other cases are also distinguishable. Unlike in *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3822883, at *6–7 (S.D.N.Y. Aug. 30, 2017), DSE cannot identify parent custodians likely to have responsive information and on its own "arrange a search" of those custodians. Also, DS Japan's documents do not "flow freely" to DSE, and DSE IT personnel are unable to access emails of DS Japan custodians. This case is also very different from *Hunter Douglas, Inc. v. Comfortex Corp.*, 1999 WL 14007 (S.D.N.Y. Jan. 11, 1999). There, the parent company's counsel admitted that the US-based subsidiary could compel its non-resident corporate parent to produce documents in response to a US-issued subpoena. DSE has no such authority.

Esperion also mischaracterizes DS Japan's involvement in the transaction. First, Esperion alleges that *DS Japan* was involved in negotiating the agreement, including preparation of the term sheet and attending negotiation sessions. Ltr. at 1-2. Esperion appears to base these statements on *one individual*, Ms. Imamura, who worked at DSE on assignment from DS Japan and who was a member of the DSE negotiation team for the transaction. Esperion cannot complain about Ms. Imamura because DSE has already agreed to search her DSE email file during the relevant time period *and* Ms. Imamura will be made available for deposition based on her role at DSE. DSE has also agreed to search the email files of Ms. Mashimo, who preceded Ms. Imamura at DSE, for the portion of the relevant time period that Ms. Mashimo was at DSE.

To the extent DSE communicated with DS Japan about the transaction, Esperion will receive any relevant and responsive communications from the DSE custodians. Indeed, DSE has agreed to search the files of every non-lawyer member of the DSE negotiation team, including DSE's current CEO, a former executive, and senior employees within the Business Development Department. Thus, if any responsive communications occurred between DSE and DS Japan related to the transaction, they most likely would have occurred through these DSE individuals and Esperion would receive them in the ordinary course of discovery.

Esperion next points to various DS Japan employees who requested or had access to the "data room" for the transaction to perform due diligence for DSE. Even if these individuals accessed the data room, they were not involved in negotiating the agreement. Due diligence on a transaction involves an array of issues, including safety, manufacturing and intellectual property, none of which are currently in play in this case. Thus, access to the data room cannot be the standard for identifying document custodians. The issue here is whether Esperion is entitled to a regulatory milestone payment when the primary endpoint of the relevant study failed to reach the minimum threshold percentage specified in the contract and which the study was highly powered to achieve. Absent some nexus to a disputed issue, data room access alone is not helpful.

Notably, Esperion asks the Court to impose a standard on unidentified employees of a non-party that Esperion refuses to apply to itself as plaintiff. For example, Esperion has resisted searching the files of its former Chief Development Officer, who was a member of Esperion's executive team when the agreement was negotiated and who oversaw the clinical trial at issue. Esperion has similarly resisted searching the files of its Senior Vice President of Clinical Development who was heavily involved in the same clinical trial and who sent presentations to DSE during negotiations that highlighted the study's primary endpoint.

Finally, Esperion has ignored the proper discovery mechanisms to pursue information from a corporation in Japan. Rather than going through these channels, Esperion prefers an end run and to burden DSE with these requests. Tellingly, Esperion served a subpoena on DSE's sister entity, Daiichi Sankyo, Inc. ("DSI"), which is based in New Jersey, but Esperion did not follow a comparable path for DSE's parent. As such, this Court should deny Esperion's request.

JONES DAY

                Respectfully Submitted,

                */s/ Jeremy P. Cole*

                Jeremy P. Cole
                *Counsel for Daiichi Sankyo Europe GmbH*

cc: All Counsel of Record (via ECF)