# JONES DAY

110 NORTH WACKER DRIVE • CHICAGO, ILLINOIS 60606

TELEPHONE: +1.312.782.3939 • JONESDAY.COM

Direct Number: (312) 269-4093
JPCOLE@JONESDAY.COM

October 18, 2023

<u>VIA ECF</u>

The Honorable Edgardo Ramos
United States District Court (S.D.N.Y.)
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

      Re:   <u>*Esperion Therapeutics, Inc. v. Daiichi Sankyo Europe GmbH*,
              Civil Action No. 1:23-cv-02568 (S.D.N.Y.)</u>

Dear Judge Ramos:

      We represent Daiichi Sankyo Europe GmbH ("DSE") and respond below to yet another request by plaintiff Esperion Therapeutics, Inc. ("Esperion") for a pre-motion conference, this time seeking permission to move for judgment on the pleadings four months after DSE filed its Answer and while the parties are in the middle of a compressed discovery schedule. Esperion provides no colorable basis for judgment on the pleadings. A motion under Fed. R. Civ. P. 12(c) requires the Court to accept as true all factual allegations in DSE's Answer and to draw all reasonable inferences in DSE's favor. Applying this standard and any rational reading of the parties' pleadings, it is clear that material facts are disputed. Thus, the Court should deny Esperion's request, which would be a waste of the Court's time and the parties' resources at this busy stage of the litigation.

      The crux of the case is whether a clinical trial sponsored by Esperion yielded results sufficient to satisfy the relative risk reduction component of the Regulatory Milestone Payment in the Agreement. Despite all of Esperion's self-proclaimed fanfare, the study's primary and most important endpoint (the main research question of the study) failed to reach the 15% floor set forth in Section 9.2 of the Agreement. Thus, while Esperion wrongly blames DSE for its current situation, the reality is the study results simply did not satisfy the parties' agreed-upon percentage thresholds of the Regulatory Milestone Payment. In other words, DSE agreed to pay Esperion a large bonus if the study results were as strong as Esperion forecasted and powered them to be (and led to the approval of a specific label). When the results fell short, Esperion's current management team (none of whom negotiated or signed the Agreement) suddenly claimed in the face of financial stress that any of a host of ***secondary*** endpoints could satisfy the risk reduction element. This was

never the deal.  No rational pharmaceutical company would have tied a $200+ million payment to a study's secondary endpoint, and DSE certainly did not do so here.[1]

Esperion's contention that "the material facts set forth in the pleadings are undisputed" cannot be reconciled with DSE's Answer.  Ltr. at 1.  Esperion's own authority indicates that a "motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings[.]" *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021) (citation omitted).[2]  That is not the case here.  In addition to denying Esperion's allegations, DSE's Answer includes affirmative defenses and a counter statement of facts, detailing how Esperion's First Amended Complaint ("FAC") "is replete with falsehoods, misleading statements, and inflammatory accusations." Dkt. 33 at 4.  Indeed, this Court has denied motions for judgment on the pleadings which are premised on the "wholly erroneous assumption that there are no issues of fact" when "Defendants' answer denies nearly all the allegations bearing on Plaintiff's claims, and it further raises twelve affirmative defenses." *Gabilly v. Cty. of New York*, 2021 WL 3667981 at *3 (S.D.N.Y. Aug. 17, 2021) (internal quotations omitted).  Moreover, when a Plaintiff seeks dismissal via Rule 12(c), "courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants, who are the non-movants in that scenario." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).  Here, accepting all factual allegations in DSE's Answer as true and drawing all reasonable inferences in DSE's favor, the Court cannot grant Esperion judgment on the pleadings.

Esperion's request is inherently self-defeating and its timing is curious:  months after DSE's Answer and weeks before the parties will depose central witnesses in the case.  Esperion admits that "[t]he parties will introduce dueling witness testimony, documentary evidence, and experts" should the case proceed to trial.  *Id*. at 3.  This admission alone confirms the case is rife with disputed issues of material fact.  Moreover, Esperion's letter contains ample extrinsic evidence beyond the pleadings, which is outside the bounds of what a Court may consider when deciding a Rule 12(c) motion.  *Daniels v. Comm. of Soc'l Sec.*, 456 F. App'x 40, 41 (2d Cir. 2012) ("In deciding a motion under Rule 12(c), the district court may consider only the contents of the pleadings themselves, documents attached to the pleadings as exhibits or incorporated by reference, and items of which judicial notice may be taken.").  Critically, courts refuse to take judicial notice of a party's financial condition in a Rule 12(c) motion when, as here, it is "irrelevant

---

[1] Esperion's allegations regarding its stock price decrease illustrate how Esperion omits key facts to appear sympathetic.  Esperion publicly disclosed the study results (with the relative risk reduction percentages) on Saturday, March 4.  On the next trading day (March 6), and before news of DSE's position became public, Esperion's stock slid 19.9% as trade press described the results as "lacklustre." Dkt. 33 at 6.  Thus, the slide began with Esperion's disclosure of the study results, not DSE's refusal to pay a milestone that Esperion did not earn.

[2] Esperion's other cases are also distinguishable.  Unlike in *Neopharm Ltd. v. Wyeth–Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 615 (S.D.N.Y. 2016), the contract here does not contain "language [] so emphatic" as to suggest only one reasonable interpretation of the contract.  Nor is DSE's position premised on the interplay between other contracts entered into on the same day as the agreement at issue, the argument that defendants advanced in *VoiceAge Corp. v. RealNetworks, Inc*., 926 F. Supp. 2d 524, 530 (S.D.N.Y. 2013).

to the causes of action." *Galley Schuler v. Rainforest All., Inc.*, 2016 WL 10516026, at *3 (D. Vt. Feb. 10, 2016).

Esperion's request is also inconsistent with its 37-page FAC that cites heavily to documents and other information outside the four corners of the Agreement. *See* Dkt. 19. Esperion fails to explain why the FAC contains so much extrinsic evidence if the contract is truly unambiguous. A contractual provision is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Bank of N.Y. Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 635 (S.D.N.Y. 2007) (quoting *Seiden Assocs. V. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). "[W]hen a contract is ambiguous…and there is extrinsic evidence of the parties' actual intent, its interpretation becomes a question of fact that should not be decided on a Rule 12(c) motion." *Soc'y for Advancement of Educ., Inc. v. Gannett Co.*, 1999 WL 33023, at *4 (S.D.N.Y. Jan 21, 1999). *See also Ignazio Messina & C.S.P.A. v. Ocean Repair Serv. Co.*, 1991 WL 116336, at *6 (S.D.N.Y. June 17, 1991) (denying Rule 12(c) motion for breach of contract claim where it was "possible that this issue [of the parties' intentions would] be resolved through discovery"). Courts in the Second Circuit routinely deny motions for judgment on the pleadings in such circumstances. *See Jujamcyn Theaters LLC v. Fed. Ins. Co.*, 2023 WL 2366789, at *7 (S.D.N.Y. Mar. 6, 2023) (collecting cases).

Perhaps most concerning is Esperion's selective quotation of Section 9.2 of the Agreement. Ltr. at 2. Viewed in full, the section states the Regulatory Milestone Payment is triggered upon:

> Grant of the first Regulatory Approval in the DSE Territory of a Licensed Product that includes cardiovascular risk reduction in the label that correlates with ***the relative risk reduction rate*** indicated below as a result of the CLEAR Outcome study. Dkt. 19-1 at § 9.2 (emphasis added).

Applying Esperion's grammatical rules, the phrase "the relative risk reduction rate" refers to ***one*** relative risk reduction rate that mattered for purposes of the milestone payment: ***the*** relative risk reduction rate for MACE-4, the study's primary and most important endpoint and most critical research question. Esperion omits the phrase – "the relative risk reduction rate" – from its letter. Esperion's fear of this phrase traces back to its FAC when, in quoting Section 9.2, Esperion inexplicably replaces the word "the" with "[a]." Dkt. 19, ¶ 77 ("Section 9.2 requires DSE to pay the Regulatory Milestone Payment upon inclusion of 'cardiovascular risk reduction in the label that correlates with **[a]** relative risk reduction of at least 15%...'"). Of course Esperion would prefer the word "a" to "the" but that is not what the Agreement says. Esperion's blatant misquoting aside, judgment on the pleadings is simply not possible on this record.

For the foregoing reasons, DSE respectfully requests that the Court deny Esperion permission to move for judgment on the pleadings.

JONES DAY

                Respectfully Submitted,

                */s/ Jeremy P. Cole*

                Jeremy P. Cole
                *Counsel for Daiichi Sankyo Europe GmbH*

cc: All Counsel of Record (via ECF)